UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DUNNING,

        Plaintiff,

v.                                    Case No: 04-10341
                                        Honorable David M. Lawson

UNITED PARCEL SERVICE,

        Defendant.

_____/

## ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING IN PART DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS, DISMISSING CERTAIN COUNTS OF THE COMPLAINT, GRANTING PLAINTIFF'S MOTION TO AMEND OR CLARIFY HIS RESPONSE TO A PRIOR DEFENSE MOTION, DENYING PLAINTIFF'S MOTION FOR CASE-DISPOSITIVE SANCTIONS, DENYING DEFENDANT'S MOTION *IN LIMINE*, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE*, AND SCHEDULING FURTHER PROCEEDINGS

The matter is before the Court on objections filed by the defendant to a report and recommendation prepared by Magistrate Judge Charles E. Binder, who recommended denial of the defendant's several dispositive motions in this employment action brought by plaintiff David Dunning, a 32-year employee of United Parcel Service (UPS). The plaintiff filed a complaint in state court raising claims under the Family and Medical Leave Act, the Americans with Disabilities Act, Michigan's Persons with Disabilities Civil Rights Act, and Michigan public policy. On May 2, 2005, the defendant filed a motion for judgment on the pleadings or for summary judgment. The motion was filed before any discovery had been conducted in this case. The motion was not adjudicated and discovery commenced. On November 15, 2005, the defendant filed a second motion for summary judgment. The plaintiff responded to both motions, and on September 13,

2005, the plaintiff filed a motion for sanctions.  All these motions were referred to the magistrate judge, who issued a report on January 17, 2006 recommending that all of the motions be denied. In addition, the plaintiff filed a motion to amend a prior filing, which the defendant has interpreted as waiving the plaintiff's "regarded as" claim.

The defendant filed timely objections to the report and recommendation, and the Court has conducted a *de novo* review.  The Court now concludes that the magistrate judge correctly concluded that dispositive motions should be denied as to the ADA claims, but the FMLA, retaliation, and public policy claims should be dismissed.  The Court, therefore, will grant in part and deny in part the summary judgment motions.  The Court also will resolve the remaining pending motions.

I.

The plaintiff began working for the defendant in 1974 loading and unloading trucks.  In 1977, he became a delivery driver or "package car driver."  Over the years, the plaintiff suffered injuries to both shoulders, and he had surgeries to treat his shoulder injuries after more conservative treatment proved ineffective.  The plaintiff's medical history is well summarized by the magistrate judge, *see* R&R at 4-12, and it is adopted here.

The dispute in this case focuses on the time period beginning in 2004, when the plaintiff once again injured his left shoulder but was cleared to return to work by Dr. Michael Austin, a shoulder specialist, provided he was assigned to a truck with power steering.  UPS had several trucks in its fleet equipped with power steering, and the plaintiff regularly used such a truck when driving his assigned route.  However, apparently UPS could not guarantee that the plaintiff would always have a truck so equipped, and on February 25, 2004, according to the plaintiff, a supervisor, Brad Keefer,

told the plaintiff that he had been placed into "temporary alternate work" because of his restriction, but that period was coming to a close and there were no jobs the plaintiff could perform.

The plaintiff was taken off work on February 27, 2004 and UPS began voluntarily paying worker's compensation benefits.  However, it discontinued the payments three weeks later.  The plaintiff contested that action and a trial before the state worker's compensation bureau was held. The plaintiff had shoulder surgery in June 2004, and in September Dr. Austin cleared the plaintiff to return to work with a power steering restriction, but the defendant would not have him back with the restriction in place.  Also in June 2004, the plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging that placing him on leave because of the power steering restriction in February 2004 constituted discrimination under the ADA and its Michigan counterpart.  After the defendant refused to reinstate the plaintiff in September 2004, he filed suit in the Saginaw County, Michigan circuit court alleging violations of the FMLA (count I), the ADA (count II), and the Michigan Persons With Disabilities Civil Rights Act (count III), retaliation under the ADA (count IV) and PWDCRA (count V), and violation of Michigan  public policy by termination for asserting rights pursuant to the workers' disability compensation act (count VI).  The defendant removed to this Court on December 7, 2004, and the dispositive motions were filed thereafter.  It appears that the plaintiff returned to work in March 2005.

In its motions, the defendant argues that the plaintiff's ADA and PWDCRA claims must be dismissed because he is not substantially limited in a major life activity and does not have a record of such an impairment.  The defendant claims the plaintiff abandoned any "regarded as" claim and cannot succeed on such a claim anyway because the defendant has never been under any misperception about the plaintiff's injuries.  The defendant states that the plaintiff's FMLA claim

must be dismissed because his claim for intermittent leave is due to a chronic medical condition, not unanticipated medical treatment for a serious health condition. The defendant contends that the plaintiff cannot establish a retaliation claim because any protected activity occurred after the adverse employment action. In its reply, to which the plaintiff did not have the opportunity to respond, the defendant argues that the plaintiff's wrongful discharge claim should be dismissed because he was never terminated and was, in fact, returned to work on March 7, 2005.

The plaintiff agrees that he is not currently disabled. However, he claims to have a record of disability due to the several shoulder injuries and surgeries he has had since the early 1990s, during which time he was substantially impaired from performing virtually any manual task with his arms. The plaintiff states the defendant discriminated against him by refusing to allow him to return to work because of his prior history of disability. The plaintiff argues that his shoulder condition is a chronic, serious, and incapacitating health condition within the meaning of the FMLA, which the defendant violated by preventing him from working at all instead of granting him intermittent leave. The plaintiff argues that the defendant misunderstands his retaliation claim, which is based on the plaintiff's refusal to reinstate him after June 4, 2004, the date on which he filed his civil rights claim.

II.

A.

The magistrate judge correctly analyzed the ADA and PWDCRA claims together, since the Michigan Act "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). The magistrate judge concluded that the plaintiff has

-4-

established "a record of" a disability within the meaning of the ADA because the plaintiff's doctors put significant restrictions on his ability to lift and lifting has been categorized as a major life activity by the EEOC. He also determined that the plaintiff has submitted sufficient evidence to move forward on a "regarded as" claim because the defendant put the plaintiff on the TAW program and considered him to be at less than "one hundred percent" fit. The magistrate judge found a disability under the broad definition in 42 U.S.C. § 12102(2) (defining disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). Because the plaintiff has shown that he is qualified for the job with a reasonable accommodation (power steering) and that he was denied that accommodation, the magistrate judge concluded that the plaintiff can proceed on his ADA claim. The magistrate judge rejected the defendant's argument that the plaintiff's claim is barred by judicial estoppel, finding that nothing in the plaintiff's testimony at the workers' compensation hearing is inconsistent with his current claims.

The defendant objects to the magistrate judge's report on the ground that the plaintiff is not claiming he was illegally denied an accommodation; instead, he is claiming he was not allowed to return to his former position because of a record of disability. The defendant is convinced that this is not an accommodations case. If it were an accommodations case, it would have to be dismissed because the plaintiff admits he is not disabled, since employers need not accommodate employees who are not disabled according to *Workman v. Frito-Lay, Inc*., 165 F.3d 460, 467 (6th Cir. 1999).

The defendant also states the plaintiff has abandoned any "regarded as" claim in his response to the plaintiff's first motion for summary judgment, where the plaintiff wrote that his claim "is that

-5-

UPS refused to take him back to work because he had a 'history' or 'record' of a substantially limiting impairment.  Therefore the actual disability or 'perception' of disability cases cited by Defendant are inapplicable to this case."  Pl.'s Resp. to Def.'s Mot. [dkt # 19] at 16.

Finally, the defendant states the magistrate judge incorrectly concluded that the plaintiff can establish a record of disability because he was never actually disabled in the past and his recuperation periods were temporary, and even if the plaintiff could establish a record of disability, the defendant states he cannot show that he was not returned to work because of that record of disability.

The Americans with Disabilities Act and its Michigan counterpart prohibit employment discrimination "against a qualified individual with a disability because of the disability of such individual in regard to" hiring, firing, terms and conditions of employment.  42 U.S.C. § 12112(a). A person is considered "disabled," and thus qualify for protection by the ADA, in three ways:

> The term "disability" means, with respect to an individual–
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  In this case, the plaintiff argues that he qualifies as having a disability under subsections (B) and (C).  The Court will discuss each in turn.

1.

The record in this case does not contain direct evidence that the plaintiff was discriminated against because of his alleged record of disability, so he must establish a circumstantial case by showing that

> (1) he . . . is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the

employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Hedrick v. Western Reserve Care System*, 355 F.3d 444, 452-53 (6th Cir. 2004) (deriving test from the *McDonnell Douglas* burden-shifting approach).  Since this case presently is at the summary judgment stage, the Court views the evidence presented in the light most favorable to the plaintiff. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") However, since the plaintiff bears the burden of proof, he must present a jury question as to each element of his claim.  *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

In establishing disability based on having a "record of . . . an impairment," the plaintiff must show that he had a history of disability, as that term has been construed in the regulations and the decisional law.  The EEOC has issued the following guidance for "record of" claims:

> Section 1630.2(k) Record of a Substantially Limiting Condition
> The second part of the definition provides that an individual with a record of an impairment that substantially limits a major life activity is an individual with a disability.  *The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability.*  For example, this provision protects former cancer patients from discrimination based on their prior medical history.  This provision also ensures that individuals are not discriminated against because they have been misclassified as disabled.  For example, individuals misclassified as learning disabled are protected from discrimination on the basis of that erroneous classification.  Senate Report at 23; House Labor Report at 52-53; House Judiciary Report at 29.
>
> This part of the definition is satisfied if a record relied on by an employer indicates that *the individual has or has had a substantially limiting impairment.*  The impairment indicated in the record *must be an impairment that would substantially limit one or more of the individual's major life activities.*  There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records.

> The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of "disability" under part 1630. Other statutes, regulations and programs may have a definition of "disability" that is not the same as the definition set forth in the ADA and contained in part 1630. Accordingly, in order for an individual who has been classified in a record as "disabled" for some other purpose to be considered disabled for purposes of part 1630, *the impairment indicated in the record must be a physical or mental impairment that substantially limits one or more of the individual's major life activities.*

29 C.F.R. Pt. 1630 App. (emphasis added).

Therefore, according to the regulation, the impairment described in the "record" must constitute an actual disability in the past within the meaning of the ADA. In other words, the impairment must "substantially limit" "a major life activity." 42 U.S.C. § 12102(2)(A).

> [T]he term "substantially limits" means inability to perform, or a severe restriction on the ability to perform as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1) (1995). The determination of whether an impairment substantially limits a major life activity requires a consideration of "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (1995). Generally, short-term, temporary restrictions are not substantially limiting.

*Roush v. Weastec, Inc*., 96 F.3d 840, 843 (6th Cir. 1996).

The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Interpretive guidelines explain that this list "is not exhaustive" and that "other major life activities include, but are not limited to, sitting, standing, lifting, [and] reaching." 29 C.F.R. Pt. 1630 App.

The Court of Appeals for the Sixth Circuit has held that short term hospitalizations following injuries are not substantially limiting, even when aggravation of the injury renders an employee

-8-

temporarily unable to work.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000) (observing that "[a]lthough the evidence did not clearly indicate that Plant's condition was temporary, Plant was unable to come forward with any evidence that it was permanent, and the mere possibility of recurrence is not sufficient to establish substantial impairment").  A several-day hospitalization after a nervous breakdown has also been held not to constitute a disability because it was temporary.  *Simpkins v. Specialty Envelope, Inc.*, 94 F.3d 645 (table), 1996 WL 452858, *6 (6th Cir. 1996) (unpublished).  However, a district court in this Circuit has held that a teacher who was incapacitated for an entire semester could qualify as disabled under the ADA, even though the incapacitation was temporary.  *Lloyd v. East Cleveland City School Dist.*, 232 F. Supp. 2d 806, 812-13 (N.D. Ohio 2002).  The court in that case explained that an impairment need not be permanent to qualify as a disability.

> However, it does not follow that any short-term or temporary conditions can qualify as a record of disability.  The duration and the long-term effect of a condition is an important factor in evaluating whether an impairment substantially limits a major life activity.  This evaluation is a case by case one.  The nature of the impairing condition, the severity of the impairment, and the type of major life activities the impairment limits, are all important factors to consider.

*Id.* at 813.

A number of other circuits have held that short periods of recuperation following surgery do not qualify as periods of disability.  *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 645-46 (2d Cir. 1998).  The Sixth Circuit has held in a non-employment context that an impairment (drug addiction) that was not permanent but lasted for one year amounted to a disability within the meaning of the ADA.  *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339-40 (6th Cir. 2002).

-9-

Lifting is a major life activity, 29 C.F.R. Pt. 1630 App., and in this case the plaintiff has presented evidence that he could not lift for periods of time after each of his surgeries. His affidavit reports that after his first surgery, "I could not lift any weight with my right arm." Pl.'s Resp. to Def.'s Mot. [dkt # 19] Ex. 1, Dunning Aff. at ¶ 3. The following year, the plaintiff's "physical limitations remained quite severe, with no pushing, pulling, lifting." *Id.* at ¶ 4. Moreover, according to his affidavit, the plaintiff's restrictions resulting from his past shoulder injuries, although not permanent, were long lasting. He stated that he injured his right shoulder at work in January of 1992 and reinjured it on July 23, 1993. UPS's company physician took him off of work on August 31, 1993, after which he underwent physical therapy on his shoulder for four months and then had surgery on December 29, 1993. He says he remained off work, could not lift any weight with his right arm, and took heavy pain medications for several weeks after the surgery. He remained disabled from work until October 1, 1994 – for a total of thirteen months – when he was allowed to return with a 70-pound lifting restriction. He says that he reinjured his right shoulder at work and was again taken off work by the company physician on January 19, 1995, underwent another surgery on his right shoulder on February 10, 1995, and continued in treatment with medications and several months of physical therapy. He finally was released to return to work with restrictions in November of 1995, but UPS did not allow him to return until January 31, 1996 when the restrictions were removed – a period that also exceeded one year.

In September 2000, the plaintiff injured his left shoulder, and in November of that year he reinjured his right shoulder. Dr. Austin performed surgery on the left shoulder on February 27, 2001, and the plaintiff was unable to work for nearly a year thereafter because of his lifting and reaching restrictions.

-10-

The Court believes that the plaintiff has brought forth evidence from which a fact finder could conclude that the plaintiff had suffered an impairment that substantially limited a major life activity, as manifested in his lengthy periods of disability from work.  UPS had a record of these injuries and periods of convalescence.  The Court agrees with the magistrate judge that the plaintiff established a disability under a "record of" theory.

In addition, there is testimony that the defendant's representative perceived the 2004 power steering restriction as encompassing more than a driving impairment.  James Lewis, the defendant's district human resources manager, testified:

> Q.  Are you in a position to testify regarding what fundamental job duty or essential job duty Mr. Dunning could not perform with his restriction?
> A.  I can only testify to what I know.
> Q.  Which is what as it relates to that question?
> A.  That he could not – he required a power steering vehicle.
> Q.  Okay.  And I'm asking if you can tell me though how the restriction of a power steering vehicle meant he could not perform the fundamental job duties or the essential job duties of his position.
> A.  As I understand it, knowing the essential functions of the job that he performed for us as a package car driver and knowing the other tasks associated with doing that job, I believe – and I did that job for two and a half years – that if he could perform all the other essential functions of a package car driver's job, then being able to negotiate and turn a non-power steering vehicle, he should not have a problem with it.  That's my belief.
> Q.  In other words, if he was really limited – given his restriction on power steering or to power steering, that he really wouldn't have been able to perform the other job duties associated with the package car driver?
> A.  That's correct.
> Q.  Did you make any determination about whether or not Mr. Dunning could perform the essential functions of his job in written form?  In other words, is that documented anywhere, your opinion or belief?
> A.  No.
> . . .
> Q.  Okay.  What job duties do you believe – other than the actual driving of a manual steering vehicle – that Mr. Dunning would not have been able to do given the power steering restriction?
> A.  What other function he would not be able to do?
> Q.  Right.

[objection omitted]

A.  I don't know what other job duties he would not be able to perform.

Q.  Well, you had just told me that you had done the job for two and a half years and it was your understanding or belief that he couldn't perform the duties involved if he couldn't drive without power steering.  So I'm asking you what you meant by that.  What other duties could he not perform, given that restriction?

A.  Well, my understanding is he says he can do everything except drive a non-power steering vehicle.  And now I interpret that question is that there is components associated with delivering packages in the back of a cargo section where any driver needs to be able to pick up and negotiate a package that weighs between 1 pound and 70 pounds, whether it's off the floor, on the middle shelf, top shelf.  And also we've got what we call the selection area.  And when the driver delivers packages out of that selection area, he's required to pull the packages at the back end of that shelf and move them up and put them into the selection area.  And you've got shelves this – you know, waist high, shoulder height and above your head, weighing anywhere from 1 pound to 70 pounds.  And you've got all kinds of motion.  And if you're able to perform all of those tasks in the back of the car, I find it very hard to believe that you cannot negotiate a steering wheel.  So I think there is – and because I've done the job, I think there's a lot tougher jobs or tasks or duties that you're required to perform in the back of the car as opposed to driving a non-power steering vehicle.

. . .

Q.  But regardless, your belief was that Mr. Dunning, if he needed a power steering restriction because of a medical condition, would not be able to do the lifting or the reaching or the pushing or the pulling or the – even getting in and out of the vehicle as trained in his position as a package car driver; correct?

A.  That's correct.

Pl.'s Mot. to Amend Resp. [dkt # 64] Ex. A, Lewis Dep. at 66-72.

The employment record bears out the supposition that if the plaintiff's 2004 injury mimicked his injuries in 1993, 1995, or 2001, then Mr. Lewis's surmise regarding the plaintiff's limitation in 2004 would be correct.  However, the medical evidence in the case suggests otherwise, that is, that the plaintiff could perform the essential functions of his job just as he had been doing it previously.  The plaintiff, therefore, has brought forward facts from which a jury might infer that the defendant relied on the plaintiff's record of disability in its decision to put him off work in February 2004 and in refusing to reinstate him in September of that year.  The Court finds, therefore, that the plaintiff

has brought forth sufficient facts to survive a motion for summary judgment under his "record of" theory.

2.

The defendant's main objection to the part of the magistrate judge's report finding merit to the plaintiff's "regarded as" claim centers on the argument that the plaintiff had waived the claim in prior briefing.  In its second motion for summary judgment and objections to the magistrate judge's report, the defendant argues that the plaintiff abandoned his "regarded as" claim in his response to the defendant's first motion for summary judgment.  Indeed, the plaintiff's first response brief [dkt # 19] states,

> The cases cited by Defendant . . . involved either a claim that the plaintiff currently suffered from a substantially limiting impairment or a claim that the employer had a "perception" that the plaintiff was so impaired of disability.  As such, the plaintiff therein were required to prove that the employers refused to allow them to return to work because the plaintiff either presently had a substantially limiting impairment of a major life activity or the employer "regarded" or "perceived" him as currently having such a "substantially limiting" impairment.  As stated, however, Plaintiff's claim herein is that UPS refused to take him back to work because he had a "history" or "record" of a substantially limiting impairment.  Therefore, the actual disability or "perception" of disability cases cited by the Defendant are inapplicable to this case.

Pl.'s Resp. to Def.'s First Mot. Summ. J. [dkt # 19] at 16.  The plaintiff's response to the defendant's second motion for summary judgment contains similar statements.  Pl.'s Resp. to Def.'s Second Mot. Summ. J. [dkt # 50] at 8.

The plaintiff has filed a motion to amend this document to avoid a finding that the claim is abandoned.  The plaintiff also denies that he has waived this claim, stating that the response quoted above is not clear.  The plaintiff argues that the "regarded as" claim is clearly alleged in the

complaint and the defendant will not be surprised or prejudiced by allowing the plaintiff to amend
the response.

Assuming for a moment that the plaintiff's brief is an admission that undoes the "regarded
as" claim pleaded in the complaint, the Sixth Circuit has held that district judges have discretion to
allow attorneys to withdraw even formal admissions made under Federal Rule of Civil Procedure
36:

> A "district court has considerable discretion over whether to permit withdrawal or
> amendment of admissions." *American Auto.*, 930 F.2d at 1119. The court's
> discretion must be exercised in light of Rule 36(b), which permits withdrawal (1)
> "when the presentation of the merits of the action will be subserved thereby," and (2)
> "when the party who obtained the admission fails to satisfy the court that withdrawal
> or amendment will prejudice that party in maintaining the action or defense on the
> merits." Here there can be no doubt that the presentation of the merits of the
> jurisdictional issue was served by allowing the withdrawal of the admission. In
> regard to prejudice, "[t]he prejudice contemplated by [Rule 36(b) ] is not simply that
> the party who initially obtained the admission will now have to convince the fact
> finder of its truth." *Brook Village North Assoc. v. General Elec. Co.*, 686 F.2d 66,
> 70 (1st Cir. 1982). Prejudice under Rule 36(b), rather, "relates to special difficulties
> a party may face caused by a sudden need to obtain evidence upon withdrawal or
> amendment of an admission." *American Auto.*, 930 F.2d at 1120. Kerry Steel has
> not shown prejudice of the sort required by the rule.

*Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 154 (6th Cir. 1997).

Although the plaintiff plainly denied that he was pursuing a "regarded as" claim in response
to the first motion for summary judgment, he will be allowed to withdraw that admission because
the defendant has failed to show how it would be prejudiced. Rather, the defendant merely asserts
that it will be prejudiced without explaining how or why. If the defendant would have to redepose
witnesses or do other additional work, perhaps prejudice might be found. But the defendant has
failed to make any such allegations. The plaintiff's motion to amend will be granted.

-14-

As to the merits of the "regarded as" claim, the ADA also prohibits discrimination against those whom the employer believes are disabled, even if they are not actually disabled.  42 U.S.C. § 12102(2)(C).  The magistrate judge cited *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999), in which the Supreme Court explained:

> There are two apparent ways in which individuals may fall within this statutory definition [in section 12102(2)(C)]:  (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton*, 527 U.S. at 489-90.  When assessing such claims, the "Court does not even focus on the disability, but on the perception of the employer regarding the perceived disability. . . . [U]nder the 'regarded as' prong, the Court must determine whether Defendants' [sic] perceived Plaintiff's clients as being disabled and discriminated against them on that basis."  *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 340 (6th Cir. 2002).  "[E]vidence that the company created a pretextual reason for [the plaintiff's] firing may tend to prove that it regarded [the plaintiff] as a disabled employee."  *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001).

The Sixth Circuit has held that application of a one hundred percent rule to a disabled employee is not permitted without an individualized determination of the employee's abilities.  In addition, the application of such a rule to an employee with only a mild impairment may be evidence that the employer regarded the plaintiff as disabled.  *Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir. 2001) (stating that "[w]here the 100% rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not, thereby

-15-

qualifying them for protection under the ADA and parallel statutes, and activating the individual assessment rule").  Similarly, the Sixth Circuit has held that a plaintiff has offered sufficient evidence to survive summary judgment by showing that an employer who refused to reinstate an employee following a disability leave because it "still had doubts" about the plaintiff's ability to perform the lifting requirements of the job.  *Todd v. City of Cincinnati*, 436 F.3d 635, 636-37 (6th Cir. 2006).

In this case, the Court finds that the magistrate judge was incorrect in his conclusion that the mere fact that the defendant considered the plaintiff to be at less than "a hundred percent" is sufficient to establish a "regarded as" claim.  The employer must regard the plaintiff as substantially limited in a major life activity.  However, the plaintiff has presented sufficient evidence to create a fact issue on whether the defendant regarded him as unable to lift or do a broad range of jobs, as demonstrated by the deposition testimony of James Lewis, the defendant's district human resources manager, quoted earlier.  The defendant understood the plaintiff's power steering restriction to mean that the plaintiff could not lift or do a number of other jobs.  It explicitly based its decision not to let him work on the power steering restriction.  That is direct evidence of discriminatory intent.  *Black v. Roadway Express, Inc*., 297 F.3d 445, 450 (6th Cir. 2002).

Once the plaintiff shows that UPS regarded him as disabled, he  then must show that he was qualified for the job.  That may be done here by showing that the manual steering requirement is not an essential job function, which is a question of fact.  *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1005 (6th Cir. 2005) (stating that "[d]etermining what functions are 'essential' to a particular position is a question of fact").  The Sixth Circuit has explained the analytical steps as follows:

-16-

> To sum up, if the plaintiff has direct evidence that the employer relied on his or her disability [including so "regarding" the plaintiff] in making an adverse employment decision . . . (1) The plaintiff bears the burden of establishing that he or she [was regarded as] . . . "disabled." (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and, therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Todd*, 436 F.3d at 638 (alteration in original).

Applying these steps, the Court concludes that the plaintiff has brought forth sufficient evidence to justify presenting his "regarded as" claim to a fact finder. He and his doctors say he was fit to return to work in September 2004, and UPS refused to allow him to work based on the belief in his disability summarized by Mr. Lewis in his testimony. The magistrate judge was correct in concluding that the summary judgment motions attacking this claim should be denied.

### B.

The magistrate judge determined that the plaintiff could proceed on his FMLA claim because he submitted evidence that he had a "serious health condition," which consisted of an injury involving "continuing treatment" under the act. 29 U.S.C. § 2611(11)(B). The magistrate judge concluded that the plaintiff's request for time off on numerous occasions for his shoulder condition gave the defendant notice that he needed FMLA leave, even if he did not expressly cite the FMLA.

The defendant states the magistrate judge misunderstood the plaintiff's FMLA claim and therefore failed to address the issues involved in this case. The defendant states that the plaintiff is asserting the right to take intermittent leave under the FMLA whenever his power steering truck is not available. Yet the magistrate judge read the plaintiff's complaint as asserting a refusal to restore the plaintiff to his job after protected FMLA leave. The defendant states the plaintiff was not

-17-

eligible to be restored to his job under the FMLA because he was out longer than the twelve weeks allowed under the Act.

The defendant states the intermittent leave provision of the FMLA is not intended to accommodate an employee who cannot perform the essential functions of the job due to an equipment limitation. Instead, it is intended to protect employees who can usually do the job but occasionally experience a medical flare up of some type that prevents them from doing the job or occasionally need time off for doctor appointments.

The plaintiff argues that he is entitled to intermittent leave under the Act because he is "unable to perform the essential functions of the position because of a chronic health condition." 29 C.F.R. § 825.203(a)(2). The plaintiff states his situation is similar to an employee who may take intermittent leave due to asthma when the pollen count is particularly high, something the regulations specifically authorize. 29 C.F.R. § 285.114. Because the plaintiff's shoulder problem qualifies as a chronic health condition, the plaintiff asserts that he is entitled to intermittent FMLA leave when he cannot perform his job on the few occasions that a manual steering truck is assigned to his route.

The FMLA provides for employees to take intermittent leave in some circumstances. 29 U.S.C. § 2612. Employees are permitted to take FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Such leave may be taken intermittently "*when medically necessary*." 29 U.S.C. § 2612(b)(1) (emphasis added). A fair reading of the statute and regulations compels the conclusion that intermittent leave may be allowed under the FMLA when a chronic condition suffered by the worker is exacerbated by a physical or an environmental factor, as in the

-18-

example of a rise in pollen count triggering an asthmatic reaction, cited by the plaintiff. *See* 29 C.F.R. § 825.114(e).

The plaintiff's circumstance is different, however. The plaintiff says that he is entitled to leave when a power-steering-equipped truck is not available to him because his then-current condition prevented him from driving a manual-steering truck. That scenario does not represent a relapsing-remitting condition as contemplated, but rather it suggests an inability to do the job without an equipment accommodation. It is not a period of incapacity due to a change in the plaintiff's own condition, but results from circumstances entirely external to the plaintiff and calls into question whether the plaintiff can perform the changing functions of the job. Employees who cannot perform the essential functions of the job at issue are not protected by the FMLA:

> (b) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA. However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA).

29 C.F.R. § 825.214(b); *see also Hatchett v. Philander Smith College*, 251 F.3d 670 (8th Cir. 2001) (noting that "[t]he purpose of the FMLA is to allow an employee to be away from the job, as opposed to using the statute as a means to force an employer to be directly involved in an employee's rehabilitation").

Of course, as noted above, the matter of whether using a manual-steering truck is an essential job function is a question of fact. However, the matter must be resolved under the ADA, not the FMLA. The Court finds, therefore, that the plaintiff has not made out a claim under the FMLA, and the magistrate judge should have recommended granting the defendant's motion attacking that count.

-19-

C.

The magistrate judge determined that the plaintiff could proceed on his retaliation claims. He concluded that the plaintiff engaged in protected activity by seeking a reasonable accommodation and FMLA qualifying leave, and by filing a complaint with the Michigan Department of Civil Rights. In its objections, UPS states that the plaintiff never made an FMLA retaliation claim, and the alleged retaliation under the ADA and Michigan's PWDCRA – the decision to put the plaintiff on a leave of absence due to his power steering only restriction – occurred *before* the EEOC complaints were filed in June 2004. The plaintiff responds by claiming that it was the defendant's continued refusal to reinstate him in September 2004 after he filed his discrimination claim that constitutes the retaliation in this case. The plaintiff's claim is that the defendant initially refused to allow him to work with his medical restriction due to discriminatory animus and continued to refuse to let him work after the charge due to retaliation.

The Court is convinced that the defendant has the better argument here. The undisputed facts show that the defendant was committed to its position that it regarded the plaintiff as disabled in February 2004 when it would not allow him to work beyond the thirty-day Temporary Alternate Work (TAW) period as long as he was not "100 percent" fit, which UPS concluded he was not due to the need for a power-steering-equipped truck. No subsequent action by the plaintiff in exercising a protected right caused the defendant to change its position or intensify or escalate its reaction to the plaintiff. A similar fact scenario was addressed by the court of appeals in *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 470 (6th Cir. 1999), where the court affirmed a summary dismissal of a retaliation claim:

> By the time plaintiff filed the EEOC charge in late November 1993, she had already concluded from her discussions with Paschal that he would not allow her to return

-21-

> to work or offer a reasonable accommodation. . . .  As the district court emphasized, defendant's position concerning plaintiff's ability to return to work with or without accommodation remained essentially the same before and after she filed the EEOC charge.  Thus, there was no evidence that plaintiff suffered any adverse action as a result of having filed the EEOC charge, and the district court properly granted judgment as a matter of law to defendant on this claim.

*Id.* at 470 (Guy, J. concurring).

The same reasoning applies to the plaintiff's public policy claim, which invokes Michigan's Worker's Disability Compensation Act.  *See* Mich. Comp. Laws § 418.301(11) (stating that an employer "shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act").  An element of such a claim requires proof that the employer's "true reasons for its actions were in retaliation for plaintiff's having filed a worker's compensation claim."  *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 470, 606 N.W.2d 398, 404 (1999).  However, the undisputed facts show that the plaintiff did not file his contested worker's compensation claim until *after* he was put off of work and the defendant ceased voluntarily paying benefits.

It should be noted that the plaintiff disputes the defendant's right to challenge that count of the complaint because the defendant's motions for summary judgment did not request dismissal of this claim, and it is therefore not properly before the court.  However, the defendant's motions for summary judgment both "request that the Complaint be dismissed in its entirety and with prejudice," Def.'s Mot. for Judgmt. [dkt # 13] at 1; Def.'s Mot. Summ. J. [dkt # 45] at 1, although neither contains any argument about this count of the plaintiff's complaint.  Because both motions actually have requested that the entire complaint be dismissed, it is proper for the Court to rule on that request.

-22-

The Court finds, therefore, that the defendant is entitled to dismissal of the retaliation and public policy claims.

D.

The plaintiff filed a motion for issue-dispositive sanctions based on defendant's counsel's alleged improper conduct and discovery violations. The defendant argued that any delay had not prejudiced the plaintiff. The magistrate judge recommended denying the motion because there is no evidence of willful bad faith by the defendant. Much of the data the magistrate ordered to be produced is not kept in the ordinary course of business and required the defendant to sift through thousands of documents. No objections have been received to this part of the recommendation, and it will be adopted. 28 U.S.C. § 636(b)(1)(C) (requiring specific objections to be filed in a timely fashion); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (holding that failure to file objections to the Report and Recommendation waives right to review).

E.

In anticipation of trial, the defendant has filed a motion *in limine* to exclude (1) evidence of other lawsuits against it, including judgments and court orders; (2) disability claims filed against it by other workers; (3) evidence of UPS's rule requiring workers to be "100 %" fit before returning to work; and (4) evidence that UPS does not accommodate workers with physical restrictions.

With respect to evidence of other claims and lawsuits, it is difficult for the Court to see how such information would be relevant to the issues raised in the plaintiff's ADA claim here. However, the Court will not foreclose the possibility that a line of questioning by the defendant might render such evidence relevant to a material issue at trial. Therefore, the Court will not bar such evidence at this time, but rather the Court finds that it must evaluate any proffered evidence in the context of

-23-

the other proofs at trial.  Before the plaintiff offers such evidence or mentions such proof in his presentation to the jury, plaintiff's counsel must seek a side bar conference or other hearing outside the jury's presence, make an offer of proof, and give the defendant an opportunity to make an objection.  *See* Fed. R. Evid. 103(c).

With respect to the evidence that UPS has a "100 % rule," the manner in which it interprets its fitness requirements or enforces such a rule, or refuses to accommodate workers with impairments or restrictions, those issues go to the heart of the case.  The defendant contends that such evidence is irrelevant, but the Court disagrees.  The existence and manner of enforcement of a one hundred percent rule may form the basis for an ADA violation.  *See Henderson*, 247 F.3d at 653.  The Court  will not  prohibit such evidence in advance on the ground of irrelevancy.  The defendant may interpose its objections to such evidence in the context of the trial on the basis of any valid ground.

The defendant's motion *in limine*, therefore, will be denied.

### E.

The plaintiff also has filed a motion *in limine* to exclude (1) evidence that the plaintiff was in a truck accident in September 2005 and the resulting discipline; (2) receipt of income from collateral sources while the plaintiff was not working for UPS during his disability lay-off; (3) grievances filed by the plaintiff over his 32-year tenure of employment with UPS; (4) other disciplinary action taken against the plaintiff over the 32-year term; (5) complaints that plaintiff filed with the National Labor Relations Board; (6) evidence of a medical malpractice case filed against the plaintiff's treating shoulder surgeon; and (7) questioning of the surgeon as to whether he issues medical work restrictions at the request of the patient.

Based on the record before the Court, it does not appear that evidence of a truck accident and attendant discipline that occurred after the lawsuit was filed and the plaintiff returned to work would make a fact of consequence to the determination of this action more or less likely. The evidence, therefore, is not relevant, Fed. R. Evid. 401, and it must be excluded. Fed. R. Evid. 402.

Receipt of income from collateral sources may not be used to mitigate damages. *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 433-36 (6th Cir. 1999) (observing that "[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfall, and also promotes the deterrence functions of discrimination statutes"); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994) (noting that "[t]he collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff receives from sources that are collateral to the tortfeasor"); *see also Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160 (6th Cir. 1996) (holding that the plaintiff's unemployment benefits and workers' compensation benefits were collateral source benefits, and thus should not have been deducted from the jury's award of back pay for racial discrimination). Evidence of such payments, therefore, is not admissible. The motion *in limine* will be granted as to that evidence.

Evidence of grievances and complaints filed by the plaintiff throughout his working tenure at UPS likewise is not relevant to a claim or defense in the case. The Court would not foreclose, however, the possibility that such documents may contain statements that might be useful for impeachment purposes. Before the defendant offers such evidence or mentions such proof in its presentation to the jury, defense counsel must seek a side bar conference or other hearing outside

the jury's presence, make an offer of proof, and give the plaintiff an opportunity to make an objection. *See* Fed. R. Evid. 103(c).

Evidence that Dr. Austin was sued for medical malpractice by the plaintiff or another patient is unlikely to advance the inquiry at trial as to a fact of consequence to the determination of the action. That evidence is irrelevant and may not be presented. However, evidence that Dr. Austin gave out work restrictions at the request of patients has a bearing on the nature of the plaintiff's physical condition in this case. Dr. Austin's practice of determining a patient's condition and reporting it to the patient's employer is a matter that may be explored on direct and cross-examination. The motion *in limine* will be denied as to that item of evidence.

III.

The Court finds that the magistrate judge properly determined that the plaintiff's ADA claims ought to proceed. However, the Court agrees with the defendant's objections concerning the FMLA, retaliation, and public policy counts of the complaint.

Accordingly, it is **ORDERED** that the defendant's objections to the magistrate judge's recommendation and report are **OVERRULED IN PART AND SUSTAINED IN PART**.

It is further **ORDERED** that the magistrate judge's recommendation and report is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the defendant's motions for summary judgment [dkt #s 13, 45] are **GRANTED IN PART AND DENIED IN PART**. Counts I, IV, V, and VI of the complaint are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion for sanctions [dkt #37] is **DENIED**.

-26-

It is further **ORDERED** that the plaintiff's motion to amend or clarify its prior filing [dkt #64] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion *in limine* [dkt #55] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the defendant's motion *in limine* [dkt #56] is **DENIED**.

It is further **ORDERED** that counsel for the parties shall appear for a Status Conference to be held at the United States District Court, 231 W. Lafayette Blvd, Chambers 802, Detroit, Michigan 48226 on **February 14, 2007 at 11:00 a.m.** to discuss the schedule for further proceedings in this case.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   January 18, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means or first class U.S. mail on January 18, 2007.

s/Felicia M. Moses
FELICIA M. MOSES